Christina M. Jepson, USB #7301
Sean A. Monson, USB #7261
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
CJepson@parsonsbehle.com
SMonson@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendant ROI Solutions, LLC*

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VERONICA STENULSON, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ROI SOLUTIONS, LLC,<br><br>Defendant. | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**<br><br>Case No. 2:20-cv-00614-DBB<br><br>Judge David Barlow |

Defendant ROI Solutions, LLC ("***ROI***") hereby files this Motion for Summary Judgment and Memorandum in Support under Rule 56 of the Federal Rules of Civil Procedure and DUCivR 56-1.  ROI respectfully requests that all claims and causes of action asserted in the Complaint be dismissed with prejudice.

### INTRODUCTION AND RELIEF SOUGHT

This case is a purported collective action brought by Plaintiff Veronica Stenulson ("***Plaintiff***") under the Fair Labor Standards Act ("***FLSA***") and the Montana Wage Payment Act

("*MWPA*") to recover wages and penalties Plaintiff alleges are owed to her and others similarly situated.

Plaintiff's FLSA and MWPA claims fail as a matter of law. The undisputed facts demonstrate that Plaintiff has been paid for all time worked under both the FLSA and the MWPA. Accordingly, her claims fail. Further, because she does not have valid claims, she cannot be the representative of the proposed collective action under the FLSA or the proposed class action under Federal Rule of Civil Procedure 23(b)(3). For these reasons, Plaintiff's Complaint should be dismissed with prejudice.

## STATEMENT OF UNDISPUATED FACTS

### ROI's Business and Clock In and Clock Out Procedures

1. ROI provides inbound call service services for various companies throughout the country. ROI handles calls from its clients' customers and potential customers regarding the services provided by ROI's clients. Declaration of Robert Lewis ("*Lewis Decl.*") at ¶ 2.

2. One of ROI's customers is a company called Hello Fresh. Hello Fresh has two accounts, the Hello Fresh account and the Every Plate account. Both are referred to collectively herein as Hello Fresh. Lewis Decl. at ¶ 3.

3. ROI handles inbound calls and chats from Hello Fresh's customers and potential customers. As required by Hello Fresh, ROI uses a software program called Genesys to handle the inbound calls and chats from Hello Fresh's customers and potential customers. Lewis Decl. at ¶ 4.

4. ROI tracks employees' time for payroll purposes using a third-party software program provided by a company called Advanced Data Processing, Inc. (the "*Time Tracking System*"). Lewis Decl. at ¶ 5.

5. ROI employees are instructed to "clock" into the Time Tracking System prior to logging into the Genesys system and taking calls or chats. Lewis Decl. at ¶ 6.

6. ROI employees are instructed to log out of the Genesys call system (which prohibits them from taking additional customer and potential customer calls or chats) prior to "clocking" out of the Time Tracking System. Lewis Decl. at ¶ 7.

7. Training regarding these procedures is completed for new employees during the training process, again with Customer Care Supervisors who manage ROI's customer service representatives, and the procedures are monitored by Account Managers and corrected when needed. Lewis Decl. at ¶ 8.

8. Employees have control over when they clock into the Time Tracking System and the Genesys call system. Lewis Decl. at ¶ 9.

9. ROI is paid by Hello Fresh based on the time that employees are logged on to the Time Tracking System. Because of that, there is no incentive for ROI to encourage its employees to spend time working on the Genesys call system while not being logged on to the Time Tracking System – ROI would not be paid by Hello Fresh for such time worked by ROI employees. Lewis Decl. at ¶ 10.

**Veronica Stenulson's Employment With ROI and Time Records**

10. Plaintiff, Veronica Stenulson ("*Plaintiff*"), was hired by ROI on August 19, 2019. Lewis Decl. at ¶ 11.

11.     Plaintiff voluntarily terminated her employment on July 30, 2020. Plaintiff worked on the Hello Fresh account as a customer service representative. Lewis Decl. at ¶ 12.

12.     Plaintiff's time records from August 20, 2019 through July 30, 2020 demonstrate that she logged in to the Time Tracking System prior to logging in to Genesys at the beginning of her shift every day that she worked except August 30, 2019 and September 19, 2019. On August 30, 2019, she logged in to Genesys one minute prior to logging in to the Time Tracking System and on September 19, 2019, she logged in to Genesys three minutes prior to logging on to the Time Tracking System. Lewis Decl. at ¶ 13.

13.     ROI customer service representatives such as Plaintiff are able to log onto their computers and onto the Time Tracking Software within one to two minutes. It takes them approximately one more minute to complete logging into the Genesys call program and begin receiving calls. Thus, the period of time between a customer representative turning on his or her computer and being ready to receive inbound calls through Genesys is three minutes or less. Declaration of Megan Schulze, ¶¶ 6–26.

## ARGUMENT

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) and (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a trier of fact or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v.*

*Liberty Lobby Inc.*, 477 U.S. 242, 247–52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the moving party has met the initial burden, the nonmoving party must go beyond the pleadings and designate specific facts showing that there is a genuine material issue for trial. *Id.* at 324. Where the nonmoving party bears the burden of proof at trial, the nonmoving party must then point to the specific evidence establishing a genuine issue of material fact with regard to each challenged element. *Id.* Mere allegations are insufficient to survive a motion for summary judgment.[1]

### A. **Plaintiff's FLSA Claim Fails as a Matter of Law Because Plaintiff's Alleged Pre-Shift Activities Are Not Compensable Work and Are De Minimis**.

Plaintiff alleges that she and the Putative Class Members "are required to start up and log into their computers before their shift officially starts, and then log into each ROI program, and

---

[1] *Anderson*, 477 U.S. at 257 ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."); *Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 994 (10th Cir. 2019) ("If the movant [demonstrates to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim], the burden then shifts to the nonmovant to 'set forth specific facts showing that there is a genuine issue for trial.' If the nonmovant 'fails to make a showing sufficient to establish the existence of an element,' the Federal Rules of Civil Procedure 'mandate [] the entry of summary judgment.'") (quoting *Anderson*, 477 U.S. at 250 and *Celotex*, 477 U.S. at 322); *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1180 (10th Cir. 2018) ("[S]ummary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue.") (quoting *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143–44 (10th Cir. 2013)); *Helget v. City of Hays*, 844 F.3d 1216, 1223 n.3 (10th Cir. 2017) ("[The plaintiff] 'must present h[er] own affirmative evidence of those facts which are contradicted by the interested testimony.'") (quoting *Wood v. Handy & Harman Co.*, 318 F. App'x 602, 606–07 (10th Cir. 2008)); *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002) ("[R]esponding party must demonstrate that there is a genuine factual dispute . . . by presenting sufficient, contradictory evidence which, if presented at trial, would allow a jury to return a verdict in the responding party's favor.").

ensure that each ROI program is running correctly—all of which can take up to twenty (20) minutes—before they are able to take their first phone call, which comes in as soon as their computers are fully operational." Complaint, ¶ 29. Plaintiff further alleges that "Plaintiff and the Putative Class Members were not compensated for work they performed for ROI prior to their scheduled shifts, including their computer start-up time, although they were expected to have completed their computer start up in advance of their official start time." Complaint, ¶ 33.

Based on the undisputed facts, Plaintiff's claims fail. From August 20, 2019 through July 30, 2020, Plaintiff logged onto the Genesys call system prior to logging onto the Time Tracking System on only two occasions – once on August 30, 2019 and once on September 19, 2019. On August 30, 2019, Plaintiff logged onto the Genesys call system one minute prior to logging onto the Time Tracking System and on September 19, 2019, Plaintiff logged onto the Genesys call system three minutes prior to logging onto the Time Tracking System.[2] Further, it is undisputed that it takes ROI's customer service representatives one to two minutes to log onto the Time Tracking System after turning on their computers and three minutes or less in total to log onto all required programs in order to begin receiving in-bound calls. Plaintiff's pre-shift activities of logging onto her computer are de minimis and not compensable under the FLSA.

    1. *Plaintiff's alleged pre-shift activities are not compensable under the FLSA.*

Plaintiff's allegations regarding time spent turning on her computer are pre-shift activities that are not compensable under the FLSA. The Portal to Portal Act (the "**Portal Act**") amended the FLSA to exclude from "compensable time 'activities which are preliminary to . . . [the]

---

[2] Information from Plaintiff's time records cannot be reasonably disputed. Those records are a matter of simple data collection.

principal activity or activities [that an employee is employed to perform], which occur . . . prior to the time on any particular workday at which such employee commences . . . such principal activity or activities.'" *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 225 (2014) (quoting 29 U.S.C. § 254(a)(2)). The pre-shift activities at issue do not constitute Plaintiff's principal activities; Plaintiff was not employed to start her computer, log in, and clock into the Time Tracking System. *See* 29 C.F.R. § 790.8 (defining "principal activities" as those "which the employee is employed to perform"). Rather, she was employed to assist customers of ROI's clients with inquiries about their accounts.

The Tenth Circuit has applied the limitations of the Portal Act to FLSA claims. In *Smith v. Aztec Well Servicing Co.*, the Tenth Circuit rejected the plaintiffs' claim that loading necessary personal-safety equipment such as "hard hats, gloves, steel-toed boots, and coverall clothing" into a vehicle started their workday. 462 F.3d 1274, 1289 (10th Cir. 2006). In doing so, the Court reasoned that, "when an employee's activity 'takes all of a few seconds and requires little or no concentration,' then the activity is 'properly considered not work at all.'" *Id.* (quoting *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 & n.1 (10th Cir. 1994)). In addition, courts have held that "[t]he donning and doffing of a helmet, safety glasses and boots are 'relatively effortless,' non-compensable, preliminary tasks." *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007) (quoting *Reich v. New York City Transit Auth.*, 45 F.3d 646, 649 (2d Cir. 1995)). Thus, although an activity may be necessary for a job, accomplishing that activity does not necessarily start the employee's compensable workday. *Aztec Well Servicing Co.*, 462 F.3d at 1290.

Courts have also determined that time spent waiting to participate in a principal activity is non-compensable. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 40 (2005); *Anderson v. Mt. Clemens*

*Pottery Co.*, 328 U.S. 680, 692 (1946); *see also* 29 U.S.C. § 254(a)(2) (stating that "no employer shall be subject to any liability or punishment under the Fair Labor Standards Act" for "activities which are preliminary to or postliminary to said principal activity or activities."). Where an activity is "akin to checking in and out and waiting in line to do so," the activity is "clearly deemed to be preliminary or postliminary," and is not compensable under the FLSA. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 39 (2014) (Sotomayor, J., concurring) (citing S. Rep. No. 48, 80th Cong., 1st Sess., 47 (1947)); *see also* 29 CFR § 790.7(g)). The Supreme Court in *Anderson v. Mt. Clemens Pottery Co.* concluded that employers could disregard "trifles" of "a few seconds or minutes" spent by employees beyond the scheduled workday in conducting activities such as waiting to punch time clocks. 328 U.S. 680, 692, 694 (1946) (holding that substantial evidence supported the master's finding that pre-shift waiting time was not compensable under the FLSA).

As applied to Plaintiff's claims, logging in to a computer and opening an electronic timekeeping program are the precise type of simple, pre-shift activities that are not considered work under the FLSA. *See Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, No. CV 13-0971 JB/GBW, 2015 WL 7873813, at *18, *21 (D.N.M. Oct. 20, 2015), *aff'd in part, rev'd in part sub nom. Jimenez v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 697 F. App'x 597 (10th Cir. 2017) (unpublished). In *Bustillos*, a dispatcher was unable to perform her job duties without first donning a headset and logging in to her computer to load several computer programs so that she could receive calls and search databases. *Id.* The court found these pre-shift, preliminary steps to be non-compensable under the FLSA because they could be achieved quickly "with minimal effort and concentration, and [were] not part of the productive work [the employee] was employed to perform." *Id.* at *18. The court found that the plaintiff's pre-shift activities were analogous to

8

"the ingress and egress process" which is not compensable under the Portal Act. *Id.* at *17.[3] As one commentator has noted, when employee computer activities are appropriately contextualized with respect to the FLSA, "booting up and shutting down become the [Portal] Act's ingress and egress"; "opening applications becomes a form of donning and doffing"; and "checking personal email or web-browsing—when permitted—becomes a break with the Internet browser becoming the breakroom." *See Colin Pajda, Note, From Door to Desk(Top): The Portal-to-Portal Act in the Digital Age*, 56 WASH. U. J. L. & POL'Y 179, 196 (2018).

In sum, the short wait time that Plaintiff experienced in logging onto her computer and clocking in before "donning" her essential work equipment (i.e., logging in to the various applications she used to perform her job duties) is "two steps removed from the productive activity" that she was hired to perform and is non-compensable under the FLSA. *Alvarez*, 546 U.S. at 42.

2. *Plaintiff's alleged pre-shift activities are de-minimis*.

The time it takes ROI customer service representatives to log in to their computer and the Genesys call system is de minimis and, therefore, non-compensable under the FLSA. The de minimis doctrine originated with the U.S. Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), and has since been applied by the Tenth Circuit in various cases. *See, e.g.*, *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1283 (10th Cir. 2020); *Castaneda v. JBS USA, LLC*, 819 F.3d 1237, 1242 (10th Cir. 2016), *as amended on denial of reh'g and reh'g*

---

[3] Under the Portal Act, an employer is expressly exempted from having to compensate employees "for or on account of . . . walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C. § 254(a)(1). This has been characterized as the "ingress" and "egress" exemption. *See Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 39 (2014) (Sotomayor, J., concurring).

*en banc* (May 3, 2016) ("Another ground for ignoring some activities at the beginning and end of the work day is the *de minimis* doctrine"). The Department of Labor has also codified the doctrine. *See* 29 C.F.R. § 785.47 ("In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded.").

The de minimis doctrine was recently applied in a Colorado District Court case that is factually similar to this case. *See Peterson v. Nelnet Diversified Sols., LLC*, 400 F. Supp. 3d 1122, 1136 (D. Colo. 2019). In *Peterson*, the plaintiffs asserted that pre-shift activities such as logging in to a computer and opening required job applications were compensable under the FLSA. *Id.* The court concluded that the amount of time it took to complete these tasks was de minimis under the test adopted by the Tenth Circuit and dismissed the plaintiffs' claims. *Id.* at 1141. Here, as there, "it is appropriate to apply [the] de minimis doctrine so that insubstantial and insignificant periods of time spent in preliminary activities need not be included in the statutory workweek." *Anderson*, 328 U.S. at 693.

"The Tenth Circuit . . . applies a multi-factor balancing test to determine whether the time at issue is 'insubstantial or insignificant . . . [and] which cannot as a practical administrative matter be precisely recorded for payroll purposes.'" *Peterson,* 400 F. Supp. 3d at 1138 (quoting 29 C.F.R. § 785.47). "First, the amount of time spent on a daily basis must be sufficiently brief to qualify as *de minimis*—courts usually permit a period of up to ten minutes to qualify as *de minimis*, although the application of the exception depends on satisfaction of the other factors in the test." *Id.* (citing *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333 (10th Cir. 1998)). "Second, the court considers the practical administrative difficulty of recording the time." *Id.* Third, the court

considers "the size of the claim in the aggregate." *Id.* Fourth and finally, the court considers "whether the claimants performed the work on a regular basis." *Id.* No single factor is determinative. *Id.* (citing *Reich*, 144 F.3d at 1333); *see also Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1179 n.8 (D. Kan. 2011) (declining to decide the issue but noting that another court had emphasized that the factors should be considered as a whole).

The first factor—whether the time at issue is sufficiently brief—weighs in favor of ROI. Where the time at issue "falls well below the ten-minute threshold, the court [should] proceed [] directly to the other factors." *Peterson*, 400 F. Supp. 3d at 1138; *see also Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 520 (E.D. Tex. 2005) (holding that Plaintiffs' claims for ten minutes or less "are *de minimis* as a matter of law."). ROI customer service representatives are able to turn on their computer and log on to the Time Tracking System (which "starts the clock" for their workday) within one to two minutes. They are able to log on to all programs necessary to begin work within three minutes. Plaintiff's time records reveal that she "logged in early" onto the Genesys call system on only two occasions – one time for one minute and one time for three minutes. These time periods are de minimis as a matter of law.

The second factor—the practical administrative difficulty of recording the time—also weighs in favor of ROI. "The operative question is whether the time at issue in this case 'cannot as a practical administrative matter be precisely recorded for payroll purposes.'" *Peterson*, 400 F. Supp. 3d at 1138 (quoting 29 C.F.R. § 785.47). Courts have acknowledged that:

> [T]he practical administrative burden on [Defendant] to cross-reference every employee's log-in/out patterns is quite high. To do so, [Defendant] would have to double-check four time stamps (clocking in/out for work; clocking in/out for lunch) for each employee on each day on the off-chance that an employee accidentally loaded an auxiliary program . . . before loading [the relevant timekeeping software]. Indeed, [Plaintiff's] argument that [Defendant] should have

11

>done such an analysis would require [Defendant] to undermine its policy prohibiting off-the-clock work by proactively searching out and compensating violations. Moreover, [Plaintiff's] contention that the de minimis doctrine does not apply because [Defendant] could ascertain the exact log-in/out times by scouring its computer records is baseless; the de minimis doctrine is designed to allow employers to forego just such an arduous task.

*Id.* at 1138–39 (quoting *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1081–82 (9th Cir. 2016)).

"[A]s a practical administrative matter," the time at issue here cannot "be precisely recorded for payroll purposes without either procuring a custom-ordered software to link the two or undergoing the laborious cross-checking at issue." *Id.* at 1139. As in *Corbin* and *Peterson*, it would be a significant burden on ROI to have to cross-reference all employees' log-in/out patterns to determine whether they were clocking in pursuant to ROI's company policy. *See Peterson*, 400 F. Supp. 3d at 1139 ("[T]he court finds this prong weighs heavily in favor of Defendant. Defendant is not obliged to use any specific timekeeping system."). Such burdensome requirements are precisely what the de minimis doctrine seeks to avoid. *See Corbin*, 821 F.3d at 1082. Thus, this factor weighs in favor of ROI.

The third factor—the aggregate size of the claim— also favors ROI. Under this factor, "the court may look to either the total value of the claim, the total number of workers, or the value of the claim per individual worker." *Peterson*, 400 F. Supp. 3d at 1140. Plaintiff is the only claimant at this juncture. Thus, it is appropriate to evaluate just her claim. *Id.* Plaintiff's claim, at most, involves somewhere between several seconds to three minutes of time each workday spent logging in to her computer and clocking into the programs necessary for her to begin work. Such time is de minimis as a matter of law. *See Hubbs v. Big Lots Stores, Inc.*, No.

LACV1501601JAKASX, 2018 WL 5264143, at *9 (C.D. Cal. July 11, 2018) (gap time of less than three minutes per shift is de minimis).

Further, even where "[t]he court does not have sufficient information before it to determine precisely the average lost wages per work day," if "there is no evidence in the record to suggest that the figure amounts to more than cents, rather than dollars, per day," the amount in question may be deemed de minimis. *Peterson*, 400 F. Supp. 3d at 1141. Here, the Plaintiff's claim for a few minutes, at most, amounts to mere cents, rather than dollars, per day. As a result, this factor weighs in favor of ROI, as well.

The fourth and final factor—whether claimants performed the work on a regular basis—favors ROI because such time cannot be considered "work" under the FLSA. Plaintiff spent some miniscule amount of time each workday logging onto her computer and clocking into the Time Tracking System. However, such time is preliminary to Plaintiff's primary duties, as discussed previously, and therefore should not be considered work time. To the extent that such activities are considered work, the time spent conducting these activities would have varied from only a few seconds to three minutes each time and is therefore difficult to ascertain. *Peterson*, 400 F. Supp. 3d at 1138 (asserting that this factor is concerned with whether the "length of the unpaid time is certain and definite.").

The de minimis factors weigh strongly in favor of ROI in this case. Plaintiff's claims under the FLSA fail as a matter of law.

B.     **Plaintiff's MWPA Claim Fails as a Matter of Law Because Plaintiff is Not Entitled to Compensation for Log-In Time and Her Claims are Preempted by the FLSA**.

Plaintiff does not have a valid wage claim under the MWPA. Contrary to Plaintiff's assertions, Plaintiff was not required to log in to multiple applications before clocking in; rather, she was simply required, due to the nature of her job, to perform the simple task of logging in to her computer before clocking in to the Time Tracking System. Such pre-shift activities were preliminary to Plaintiff's employment and plausibly took no more than mere seconds to three minutes.

Plaintiff's claim that these activities involve compensable time under the MWPA fails for the same reasons it fails under the FLSA. Under Montana law, as under federal law, "activities such as checking in and out and waiting in line to do so" are not "regarded as integral parts of the principal activity or activities" an employee is hired to perform. Mont. Admin. R. 24.16.1008. Further, the MWPA specifically precludes Plaintiff's claim for wages. Under MWPA § 39-3-408, "the penalty provisions of 39-3-206 do not apply to minimum wage and overtime claims that are subject to the Fair Labor Standards Act."

Plaintiff requests payment under the MWPA for "unpaid 'straight time' or 'gap time' wages for services rendered on behalf of ROI." Complaint, ¶ 76. In an obvious attempt to avoid preemption of her MWPA claim, she characterizes this claim as "independent of [the] claims for unpaid overtime wages pursuant to the FLSA," *Id.* at ¶ 77. However, Plaintiff's remaining allegations belie this characterization. Indeed, in the following paragraphs, she alleges that "Plaintiff Stenulson and other Montana Class Members are not exempt from receiving overtime benefits under the MWPA." *Id.* at ¶ 79.

Based on Plaintiff's time records and the undisputed evidence regarding the time necessary for ROI customer service representatives to log onto their computers and begin work, there is no basis for Plaintiff's assertion that she was not paid for regular hours worked in a 40-hour-workweek. Rather, Plaintiff's MWPA claims are duplicative of her claims for overtime pay under the FLSA, and as such, are preempted pursuant to MWPA § 39-3-408. S*ee Stewart v. Region II Child & Family Servs.*, 242 Mont. 88, 99, 788 P.2d 913, 920 (1990) ("If the legislature intended to allow F.L.S.A. employees to also take advantage of the [MWPA], the limiting provision of . . . § 408 would not have been necessary . . . ."). Plaintiff's claims under the MWPA fail as a matter of law.

C. **Plaintiff's Request to Certify the Collective and Class Actions Should Be Denied Because Plaintiff is Not a Proper Party Representative**.

As discussed previously, Plaintiff's claims under both the FLSA and the MWPA fail as a matter of law. Because Plaintiff does not have a valid claim under the FLSA, she cannot be "similarly situated" to the putative collective action members who allegedly have valid claims. *See* 29 U.S.C. § 216(b). Accordingly, Plaintiff cannot represent the proposed collective action members. *See id.* (providing that an FLSA collective action may be maintained by an employee on behalf of herself and "other employees similarly situated"); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 495 (D.N.J. 2000) (stating that, in determining whether to certify a proposed FLSA collective action, "The key issue to be resolved is whether the named plaintiffs and the proposed class are 'similarly situated,' such that the named plaintiffs are adequate representatives of the proposed class.").

Likewise, because Plaintiff does not have valid claims under the MWPA, she cannot satisfy the typicality or adequacy requirements of Rule 23(a) for class certification. *See Hammond v.*

15

*Lowe's Home Ctrs., Inc.*, 2004 WL 957844 at *2–*3 (D. Kan. Mar. 17, 2004) (denying certification of a class action where the named plaintiffs' claims were preempted, holding that "[w]ithout individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class"); *Killian v. McCullough*, 873 F. Supp. 938, 945 (E.D. Pa. 1995) (noting that, where named plaintiffs do not have valid claims, they "cannot adequately pursue the remedies that are available to the members of the putative class," and they fail to meet FRCP 23(b)(3)'s typicality and adequacy requirements). Accordingly, this Court should deny Plaintiff's request to certify either the FLSA collective action or the MWPA class action.

## CONCLUSION

Plaintiff's FLSA and MWPA claims fail as a matter of law because Plaintiff cannot show that the pre-shift activities at issue constitute "work" under either the FLSA or MWPA. Moreover, even if such activities are "work," the time it takes to complete these tasks is de minimis, and therefore the claims are not compensable. Because Plaintiff does not have valid claims, she is not a proper representative of the proposed collective or class action. Accordingly, ROI respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice.

RESPECTFULLY SUBMITTED this 4th day of December 2020.

> */s/Sean A. Monson*
> Christina M. Jepson
> Sean A. Monson
> PARSONS BEHLE & LATIMER
> *Attorneys for Defendant ROI Solutions, LLC*

PBL\4835-4389-4738.v6-12/4/20

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December 2020, I electronically filed the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** with the Clerk of Court using the CM/ECF system which sent notification of such filing to all parties of record.

*/s/ Sean A. Monson*
