IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| VERONICA STENULSON and MERRILL LOWE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROI SOLUTIONS, LLC,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:20-cv-00614-DBB-JCB<br><br>District Judge David Barlow<br><br>Magistrate Judge Jared C. Bennett |

District Judge David Barlow referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court are: (1) Plaintiff Veronica Stenulson's ("Ms. Stenulson")[2] proposed notice and consent form and notice protocol,[3] and (2) Defendant ROI Solutions, LLC's ("ROI") objections to Ms. Stenulson's proposed notice and notice plan.[4] The court has carefully reviewed the parties' written submissions and concludes that oral argument is not necessary. Therefore, the court decides the issues based upon the written submissions. Based

---

[1] ECF No. 19.

[2] The court notes that although Ms. Stenulson was originally the sole named plaintiff in this case, the court later granted Ms. Stenulson leave to amend her complaint to add Merrill Lowe as a named plaintiff and assert an additional class-action claim under state law. ECF No. 62.

[3] ECF No. 56.

[4] ECF No. 57.

upon the analysis set forth below, the court resolves the parties' disputes concerning: (1) the content of the notice and consent form, (2) the notice plan, and (3) other issues.

## BACKGROUND

The operative complaint in this case asserts a putative collective action claim under the Fair Labor Standards Act ("FLSA"), as well class-action claims under state law.[5] On December 14, 2020, Ms. Stenulson moved for conditional certification of and court-supervised notice to potential opt-in plaintiffs.[6] Judge Barlow held oral argument on several pending motions on September 24, 2021, including Ms. Stenulson's motion.[7] At the hearing, Judge Barlow granted Ms. Stenulson's motion for conditional certification and notice to potential opt-in plaintiffs. The same day, Judge Barlow issued an order memorializing his ruling.[8] That order required the parties to meet and confer concerning a stipulated notice and submit that notice to the court within thirty days.

After the parties were unable to stipulate to a proposed notice, consent form, and notice plan, Ms. Stenulson filed her proposed notice and consent form and notice protocol.[9] ROI filed their objections to Ms. Stenulson's filing the same day.[10] Although the parties agree on most of

---

[5] *See generally* ECF No. 63.

[6] ECF No. 18.

[7] ECF No. 46.

[8] ECF No. 47.

[9] ECF No. 56.

[10] ECF No. 57.

Ms. Stenulson's proposed notice, consent form, and notice plan, they have unresolved disputes about certain issues.

## ANALYSIS

Below, the court addresses the parties' disputes concerning the notice, consent form, and notice plan. Based upon the following analysis, the court resolves those disputes, which relate to: (I) the content of the notice and consent form, (II) the notice plan, and (III) other issues.

### I. Content of the Notice and Consent Form

The parties dispute the following issues regarding the content of the notice and consent form: (A) whether the notice should include the case caption and where the statement about court neutrality should be placed; (B) inclusion of a statement in the notice that individuals who signed an arbitration agreement are ineligible to opt in; (C) inclusion of a statement in the notice that putative collective members should not contact ROI to discuss this action; (D) inclusion of a statement in the consent form authorizing continued use of the form. The court resolves each issue in turn below.

Before beginning its analysis, the court notes that "[u]nder the FLSA, the [c]ourt has the power and duty to ensure that the notice is fair and accurate, but it should not alter plaintiff's proposed notice unless such alteration is necessary."[11] Additionally, the court notes that neither party has cited to any binding authority on any of the disputes addressed herein. Thus, the court

---

[11] *Creten-Miller v. Westlake Hardware, Inc.*, No. CIV.A. 08-2351-KHV, 2009 WL 2058734, at *2 (D. Kan. July 15, 2009); *see also Lewis v. ASAP Land Express, Inc.*, No. CIV.A.07-2226-KHV, 2008 WL 2152049, at *2 (D. Kan. May 21, 2008).

exercises its discretion to resolve the disputes based upon its interpretation of the persuasive authority cited by the parties.

### A. Case Caption and Statement About Court Neutrality

Ms. Stenulson's proposed notice contains the case caption for this matter,[12] along with a disclaimer in bold text at the end of the notice indicating that although the court has approved the notice, it takes no position on the merits of the claims in this case.[13] Ms. Stenulson argues that inclusion of the case caption is "regularly approved by district courts in the Tenth Circuit."[14] With respect to the placement of the disclaimer language, Ms. Stenulson contends that "it is in the same location required by other courts."[15]

ROI objects to the inclusion of the case caption. Alternatively, ROI argues that, if the case caption is included, the caption should include the name of the document, and the disclaimer language should be placed directly under the case caption.

Having considered the authority cited by each party, the court is persuaded by the cases Ms. Stenulson cites from district courts in the Tenth Circuit indicating that inclusion of the case caption is appropriate.[16] Therefore, Ms. Stenulson is permitted to retain the case caption in the notice.

---

[12] ECF No. 56-1 at 2 of 6.

[13] ECF No. 56-1 at 5 of 6.

[14] ECF No. 56 at 3.

[15] *Id*. at 4.

[16] *See, e.g.*, *Whitlow v. Crescent Consulting, LLC*, 322 F.R.D. 417, 425 (W.D. Okla. 2017) (permitting inclusion of case caption); *Aguilar v. Mgmt. & Training Corp.*, No. CV 16-050 WJ/GJF, 2017 WL 4277139, at *7 (D.N.M. Jan. 27, 2017) (recognizing the need for the court to

As for inclusion of the name of the document in the caption and placement of the disclaimer language, ROI has failed to show that alteration of Ms. Stenulson's form is "necessary."[17] Indeed, ROI has not cited to any authority indicating that the caption of a notice must contain the name of the document or that disclaimer language in a notice is required to be included below the case caption. Therefore, Ms. Stenulson need not include the name of the document in the case caption. Ms. Stenulson also need not alter the placement of the disclaimer language.[18]

B.  Individuals Who Signed an Arbitration Agreement

ROI seeks to include in the notice a provision stating that potential opt-in plaintiffs are not eligible to join this action if they signed a valid and enforceable arbitration agreement with ROI. Ms. Stenulson objects to inclusion of such a provision because, among other things: (1) there is no indication whether the arbitration agreements that ROI entered into with its

---

"both: (1) communicate its neutrality, and (2) convey that the notice itself is a court document" and concluding that "inclusion of a case caption achieves the latter without risking the former"), *report and recommendation adopted*, No. CV 16-050 WJ/GJF, 2017 WL 4534874 (D.N.M. Feb. 15, 2017); *Creten-Miller*, 2009 WL 2058734, at *2 (permitting inclusion of case caption and noting that "[o]ther district courts have concluded that the caption is proper so long as the notice includes overt disclaimer language").

[17] *Creten-Miller*, 2009 WL 2058734, at *2; *see also Lewis*, 2008 WL 2152049, at *2.

[18] *See, e.g.*, *Creten-Miller*, 2009 WL 2058734, at *2 (rejecting the defendant's request to move disclaimer language from the end of the notice to the beginning because: (1) "[o]ther than arguing that recipients might mistakenly believe that the Court approves the action, and citing cases which articulate the Court's broad duty to ensure that the notice is fair and accurate, [the defendant] cite[d] no specific authority or evidence that the disclaimer should appear at the beginning"; (2) "[c]ourts in this district and others regularly approve notices which include the disclaimer language in both locations"; and (3) the defendant "provide[d] no compelling reason why it should be moved").

employees are valid and enforceable; (2) each opt-in plaintiff should have the opportunity in this court to raise any challenges he or she has to an arbitration agreement; and (3) "[t]he majority of district courts to have addressed the issue have determined that the fact that some employees have signed arbitration agreements does not preclude conditional certification as to all employees."[19]

For the following two reasons, the court agrees with Ms. Stenulson's arguments. First, ROI's arguments in support of inclusion of the provision appear to be based upon its assumption that the arbitration agreements at issue are indeed valid and enforceable. However, until an opt-in plaintiff challenges the validity and enforceability of such an arbitration agreement, that issue is not ripe for consideration. Second, this court agrees with the approach taken by the majority of other district courts on this issue. Accordingly, Ms. Stenulson need not include in the notice ROI's proposed provision stating that potential opt-in plaintiffs are not eligible to join this action if they signed an arbitration agreement with ROI.

C.   **Contact with ROI**

Ms. Stenulson's proposed notice includes a provision stating that recipients of the notice should not contact ROI to discuss this case.[20] Ms. Stenulson contends that the provision is appropriate to ensure that ROI does "not cross any ethical barriers by communicating with"

---

[19] *Camara v. Mastro's Rests. LLC*, 340 F. Supp. 3d 46, 59 (D.D.C. 2018) (quotations and citations omitted).

[20] ECF No. 56-1 at 4 of 6.

potential opt-in plaintiffs about the merits of this case and their claims.[21] ROI objects to inclusion of that provision.

The court is not persuaded that potential opt-in plaintiffs should not be permitted to contact ROI. Importantly, the case Ms. Stenulson cites to support her argument did not address whether potential opt-in plaintiffs should be advised to not contact the defendant; instead, it addressed whether the defendant's counsel's contact information should be included in the notice.[22] Furthermore, Ms. Stenulson's arguments concerning the need to prevent ROI from crossing any ethical barriers is speculative. For those reasons, Ms. Stenulson may not retain the provision in the notice that instructs recipients to refrain from contacting ROI.

### D. Continued Use of Consent Form

Ms. Stenulson's proposed consent form contains a provision stating that the opt-in plaintiff agrees that, if needed, he or she authorizes Ms. Stenulson's counsel in this case to use the consent form to refile his or her claim "in a separate lawsuit or arbitration against ROI."[23] Ms. Stenulson argues that the provision is a "prophylactic measure" to ensure that opt-in plaintiffs are not prejudiced and that their claims are adequately protected.[24]

ROI contends that the provision is inappropriate because it goes beyond this case. In support of its argument, ROI relies upon *Calvillo v. Bull Rogers, Inc.*, in which a court in the

---

[21] ECF No. 56 at 6.

[22] *Pruess v. Presbyterian Health Plan, Inc.*, No. CV 19-629 KG/JFR, 2020 WL 6544243, at *7 (D.N.M. Nov. 6, 2020).

[23] ECF No. 56-1 at 6 of 6.

[24] ECF No. 56 at 7.

District of New Mexico struck language related to use of a consent form "in any subsequent action" or "in any subsequent case as necessary."[25] The court concluded that such language was "unnecessary and may be misleading to an individual whose intention is to opt[ ]in to the present litigation" and that the language had "no legal basis to bind the individual."[26] However, the court allowed the consent form to retain language allowing the form to "be used in this case as necessary."[27]

The court is not persuaded that Ms. Stenulson's inclusion of this provision, as drafted, is appropriate. Like the court in *Calvillo*, this court will not permit inclusion of language that binds opt-in plaintiffs to use of their consent forms for separate, future litigation or arbitration. Indeed, although individuals may opt into this case, they may not wish to opt into a separate case in the future, or they may wish to do so with different counsel. However, the court permits the consent form to include language to allow Ms. Stenulson's counsel to use the consent forms as needed in *this case*. Thus, Ms. Stenulson's proposed consent form shall be altered in accordance with that direction.

**II.     Notice Plan**

The parties dispute the following issues for the notice plan: (A) whether the notice should be sent to ROI employees who have signed arbitration agreements with ROI; (B) the inclusion of

---

[25] 267 F. Supp. 3d 1307, 1316 (D.N.M. 2017) (quotations and citation omitted).

[26] *Id.*

[27] *Id.* (quotations omitted).

a link to the notice and consent form with the ability to execute electronically; and (C) whether a reminder notice should be sent. The court resolves each issue in turn below.

### A.     Individuals Who Signed an Arbitration Agreement

In an argument related to its argument addressed in Section I.B. above, ROI contends that the notice should be sent only to employees who have not signed a valid and enforceable arbitration agreement with ROI. For the reasons noted in Section I.B. above, the court rejects ROI's argument. Again, "[t]he majority of district courts to have addressed the issue have determined that the fact that some employees have signed arbitration agreements does not preclude conditional certification as to all employees."[28] Therefore, the court concludes that the notice should be sent to all potential opt-in plaintiffs, not just those who have not signed an arbitration agreement with ROI.[29]

### B.     Link and Electronic Execution

The parties have agreed to distribute the notice and consent form via first class mail and text message; however, the content of the text message is disputed. On the one hand, Ms. Stenulson proposes sending a text message to potential opt-in plaintiffs with a link to a secure website where they can view the court-approved notice and electronically execute their consent forms. ROI, on the other hand, proposes sending a text message with an attached file or image of

---

[28] *Camara*, 340 F. Supp. 3d at 59 (quotations and citations omitted).

[29] *Id.* (stating that the court would "not prematurely limit the dissemination of notice" when, among other things, "questions of fact remain[ed] about the existence and validity of [the] arbitration agreements").

the notice and consent form. The parties dispute the relative costs, reliability, and accuracy of their respective proposed methods.

ROI's main arguments against using Ms. Stenulson's proposed method are: (1) placing the notice and consent form on a website makes it difficult to know whether the notice or consent form will be "consistent and undistorted for the full period" or "changed or corrupted during the notice period";[30] (2) websites are prone to technical issues such as being hacked or having servers go down; and (3) using Ms. Stenulson's proposed method will "result in additional and unnecessary costs for, e.g., website design and hosting."[31] ROI also argues that using its proposed method will "help ensure that recipients read and understand the full [n]otice and the implications of deciding whether to seek to join this action."[32]

ROI's arguments are untenable. First, ROI has provided only speculative arguments that the notice or consent form might be altered. Second, there are equally challenging technical issues involved with employing ROI's proposed method. Third, ROI's argument about increased and unnecessary costs is not a relevant consideration given that Ms. Stenulson will bear those burdens. Finally, the court is unpersuaded that receiving a file or image of the notice and consent form—rather than receiving the information by way of website—will somehow ensure that recipients read and understand the documents. For those reasons, the court concludes that the text

---

[30] ECF No. 57 at 7.

[31] *Id*. At the same time, ROI admits that Ms. Stenulson will bear all costs associated with the notice and consent form. *Id*. at 7 n.5.

[32] ECF No. 57 at 8.

message distribution of the notice and consent form will proceed in accordance with Ms. Stenulson's proposal.

### C. Reminder Notice

Ms. Stenulson proposes that a reminder notice be sent via text message to all potential opt-in plaintiffs halfway through the notice period. Ms. Stenulson contends that this will "ensure" the potential opt-in plaintiffs "are informed of their rights."[33] ROI opposes the sending of a reminder notice as unnecessary and inappropriate because it could be interpreted as court endorsement of joining the action. ROI further argues that sending the notice by two means (first class mail and text message) will provide sufficient notice.

The parties have cited persuasive authority in support of their respective positions. Having considered that authority, this court is persuaded by the authority ROI cites and concludes that a reminder notice is neither necessary nor appropriate here.[34] Therefore, Ms. Stenulson will not be permitted to send a reminder notice.

---

[33] ECF No. 56 at 9.

[34] *See, e.g.*, *Bagoue v. Developmental Pathways, Inc.*, No. 16-CV-01804-PAB-NRN, 2019 WL 1358842, at *4 (D. Colo. Mar. 25, 2019) ("[T]he Court will not authorize a reminder notice, as a reminder notice may 'improperly suggest the Court's endorsement of [p]laintiff's claims.'") (alteration in original) (quoting *Fenley v. Wood Group Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074-75 (S.D. Ohio 2016))); *Fenley*, 170 F. Supp. 3d at 1074-75 (concluding that a reminder notice was not warranted and noting that "the Court should be hesitant to authorize duplicative notice because it may unnecessarily stir up litigation or improperly suggest the Court's endorsement of Plaintiff's claims" (quotations and citation omitted)); *Witteman v. Wisconsin Bell, Inc.*, No. 09-CV-440-VIS, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010) ("[T]he reminder is unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit. The purpose of notice is simply to inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit.").

### III.     Other Issues

In addition to the foregoing issues, the court addresses the following two additional issues: (A) whether ROI should be required to disclose certain Social Security numbers, and (B) whether non-postmarked consent forms must be date stamped. The court resolves those issues below.

####     A.     Social Security Numbers

In a footnote in her briefing on her proposed notice, Ms. Stenulson contends that if mailed notices are returned as undeliverable, ROI should be required to provide Social Security numbers for those opt-in plaintiffs within three business days of Ms. Stenulson's request so that current addresses can be found for the returned notices.[35] ROI objects to that process based on privacy concerns associated with disclosing Social Security numbers. ROI also contends that the process is unnecessary because the notice is also being sent by text message. ROI further contends that employing Ms. Stenulson's proposed process is premature because the notice has not yet been sent, and, thus, it is unclear whether any notices will in fact be returned as undeliverable. ROI asserts that Ms. Stenulson should raise the issue with the court later if it becomes ripe.

The court agrees with ROI's arguments. First, there are legitimate privacy concerns implicated by disclosing Social Security numbers.[36] Second, because the notice is being sent by

---

[35] ECF No. 56 at 2 n.1.

[36] *See, e.g.*, *Eley v. Stadium Grp., LLC*, No. 14-CV-1594 (KBJ), 2015 WL 5611331, at *3 (D.D.C. Sept. 22, 2015) (providing that in the FLSA context, "courts are more cautious when it comes to [disclosing] social security numbers, which implicate serious privacy concerns"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011) (stating, in

text message, in addition to being sent by first class mail, it increases the likelihood that potential opt-in plaintiffs will receive the notice even if their mailed notice is returned as undeliverable. Third, at this point, Ms. Stenulson has not shown a need for the disclosure Social Security numbers.[37] Finally, Ms. Stenulson can raise the issue with the court at a later date if it becomes necessary.[38] For those reasons, at this point, the court will not require ROI to produce Social Security numbers for any undelivered notices.

B.   **Date Stamping**

ROI requests that any non-postmarked consent forms be date stamped upon receipt together with of the name of the person who received it to create a record of receipt. The court concludes that this is a reasonable request to ensure an accurate record of receipt of consent

---

the FLSA context, that "courts often decline to allow discovery of social security numbers due to privacy concerns").

[37] *See, e.g., Eley,* 2015 WL 5611331, at *3 ("Plaintiffs have not explained any particular need for the potential plaintiffs' social security numbers, and there is no reason to believe that names, home addresses, email addresses, and phone numbers will not be enough to reach all potential plaintiffs."); *Santinac v. Worldwide Lab. Support of Illinois, Inc.*, 107 F. Supp. 3d 610, 617 (S.D. Miss. 2015) (declining to order production of Social Security numbers in the FLSA context where the plaintiffs had not demonstrated a need for the information); *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 377 (N.D.W. Va. 2012) (stating, in the FLSA context, that "the plaintiffs have not established a need for the social security numbers of the putative class members and that the other information requested is sufficient to provide notice to the opt-in class").

[38] *See, e.g., Eley,* 2015 WL 5611331, at *3 ("If Plaintiffs are unable to reach one or more potential plaintiffs based on the information that is produced, they may move for a further order requiring defendants to product additional information about those individuals." (quotations and citations omitted)); *Whitehorn,* 767 F. Supp. 2d at 448 (stating, in the FLSA context, that "[w]hile courts often decline to allow discovery of social security numbers due to privacy concerns, it is generally accepted that such discovery is permitted where Plaintiff can demonstrate that names and contact information are insufficient to effectuate notice").

forms. Therefore, Ms. Stenulson will be required to date stamp any non-postmarked consent forms along with the name of the person who received it.

## **ORDER**

IT IS HEREBY ORDERED that the content of the notice and the consent form and the notice plan shall comply with the requirements outlined above.

IT IS SO ORDERED.

DATED this 1st day of February 2022.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge
