Austin W. Anderson, austin@a2xlaw.com
(Admitted *Pro Hac Vice*)
Clif Alexander, clif@a2xlaw.com
(Admitted *Pro Hac Vice*)
**ANDERSON ALEXANDER, PLLC**
Attorneys For Plaintiffs
819 North Upper Broadway
Corpus Christi, Texas 78401
Telephone (361) 452-1279

Andrew W. Stavros (8615)
Austin B. Egan (13203)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
andy@stavroslaw.com
austin@stavroslaw.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| VERONICA STENULSON and MERRILL LOWE, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>ROI SOLUTIONS, LLC,<br><br>    Defendant. | **PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT**<br><br>Civil No.: 2:20-cv-00614-DBB-JCB<br><br>Judge David Barlow<br><br>Magistrate Judge Jared C. Bennett |

**TO THE HONORABLE MAGISTRATE JUDGE BENNETT:**

Plaintiffs Veronica Stenulson and Merrill Lowe, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), submit this Unopposed Motion for Approval of the Settlement of Plaintiffs' claims brought against ROI Solutions, LLC ("ROI" or "Defendant") under

the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 ("FLSA").[1] The Settlement Agreement and Release ("Agreement"), attached under seal as Exhibit 1, represents a fair and reasonable resolution of Plaintiffs' and Defendant's (collectively, the "Parties") *bona fide* dispute over the FLSA claims, and meets the standards for judicial approval. The Court should approve the Settlement Agreement in full.

## I.
## PROCEDURAL HISTORY

On September 2, 2020, Veronica Stenulson filed her collective/class action lawsuit in the United States District Court for the District of Utah, styled *Veronica Stenulson v. ROI Solutions, LLC*, No. 2:20-cv-00614-DBB-JCB (D. Utah). *See* ECF No. 2. On November 19, 2020, Defendant filed its Original Answer, denied Plaintiff's allegations and asserted numerous defenses to Plaintiff's claims.[2] *See* ECF No. 14. Shortly thereafter, Defendant moved for summary judgment against Plaintiff Stenulson, individually. *See* ECF Nos. 15–16. On December 14, 2020, Plaintiff moved for conditional certification of a collective action. *See* ECF No. 18. Plaintiff also moved to continue her response to Defendant's dispositive motion. *See* ECF No. 23. After a hearing, the Court denied Defendant's Motion for Summary Judgment and Granted, in part, Plaintiff's Motion for Conditional Certification. *See* ECF No. 47. During the course of the Notice and Opt-In Period, 1,406 individuals filed consent forms to join this Lawsuit.

The Parties determined that the interests of their respective clients would be best served by attempting to resolve this matter, through mediation. Defendant provided Collective Counsel with relevant time and payroll data for the Plaintiffs and Opt-In Plaintiffs, as well as data applicable to the entire Collective. Plaintiffs utilized this data to craft detailed damage models that informed their

---

[1] In addition to the FLSA claims, the settlement also covers state law claims that do not require Court approval.

[2] Plaintiffs have since filed their First Amended Complaint on January 2, 2022. *See* ECF No. 63. Defendant filed their respective Answer to First Amended Complaint on January 18, 2022. *See* ECF No. 65.

position leading up to, and during, mediation. On June 28, 2022, the Parties mediated this matter in Salt Lake City, Utah before Dennis Clifford, a well-respected wage and hour mediator. Though the Parties did not reach a settlement during mediation, Mr. Clifford submitted a mediator's proposal that both Parties subsequently agreed to on July 6, 2022.

## II.
## SUMMARY OF THE SETTLEMENT AGREEMENT

### A. THE GROSS SETTLEMENT FUND

The Parties agreed to settle Plaintiffs' claims for a confidential amount identified in § III.A. of the Agreement. *See* Ex. 1, § III.A. The Gross Settlement Amount includes the settlement payments to the Settlement Collective Members, Collective Counsel's attorneys' fees and out-of-pocket litigation expenses, Service Awards to the Named Plaintiffs, and the costs of settlement administration. *Id.* The portion of the Gross Settlement Amount remaining after the above deductions, subject to Court approval, shall be the Net Settlement Amount. Other than the payment of Defendant's share of the payroll taxes, Defendant shall not make any payment beyond the Gross Settlement Amount.

### B. IDENTIFICATION OF THE COLLECTIVE MEMBERS INCLUDED IN SETTLEMENT AGREEMENT

The Agreement includes Plaintiffs, the Opt-In Plaintiffs who have joined this Lawsuit, as identified in Exhibit C to the Agreement, and all current and former hourly call-center employees who worked for Defendant, anywhere in the United States, at any time from September 2, 2017, through June 28, 2022 (the "Collective"). *See* Ex. 1, § I.B.

### C. THE NET SETTLEMENT ALLOCATION

As discussed throughout, the Parties agreed to a *pro rata* allocation of the Net Settlement Amount based on the number of workweeks worked by the Collective Members during the applicable

time period.[3] Ex. 1, § III.C. Pursuant to the formula set forth in the Agreement, each Collective Member is entitled to receive a minimum $25.00 amount. After deducting the $25.00 minimum payments from the Net Settlement amount, the remaining Net Settlement Amount will be divided, on a *pro rata* basis, according to the number of weeks worked during the collective period. Each Collective Member will be entitled to receive their minimum $25.00 amount, in addition to their *pro rata* share of the Net Settlement Amount, as described above.

D.    **LIMITED RELEASE OF WAGE AND HOUR CLAIMS AGAINST DEFENDANT**

The Agreement defines the claims to be released by the Settlement Collective Members as follows:

> "Released Claims" means all, claims, complaints, rights, demands, liabilities and causes of action that are alleged, or could have been alleged in the operative Complaint in this action, including, but not limited to, all of the following claims for relief: (a) that Defendant failed to pay and/or properly calculate all wages due, including the regular rate of pay, straight time, compensable time, overtime, double-time, premium pay, bonuses, minimum wages, and all other forms of wages; (b) that Defendant required its employees to perform work "off-the clock" and without pay; and (c) that Defendant is responsible for all unpaid wages and overtime, liquidated damages, and other damages owed under the Fair Labor Standards Act ("FLSA") through an individual or collective action pursuant to 29 U.S.C. § 216(b), and to recover all other damages owed pursuant to state-laws as an individual or as a participant in a Rule 23 class action, along with any other related wage and hour claims under FLSA, under the theories of quantum meruit, unjust enrichment, conversion, breach of contract, theft of labor, and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, all claims for costs, attorneys' fees and/or interest, or any other benefits against Released Parties.

Ex. 1, § I.U. Plaintiffs also executed their respective standalone Waiver and General Releases in their roles as Named Plaintiffs, and in further consideration for their Service Awards. *See* Exhibit D to Exhibit 1.

E.    **COLLECTIVE COUNSEL'S NEGOTIATED FEE AND COST AWARD**

---

[3] Because of the way this data is maintained, identifying the number of workweeks worked across the settlement period would be time consuming and difficult. Defendant does, however, have the total number of hours worked. To most efficiently and fairly calculate the settlement amounts, the Parties have agreed to divide each worker's total number of hours worked by forty (40) to identify their presumed number of work weeks.

Under the Agreement, Collective Counsel shall receive 40% of the Gross Settlement Amount as payment for their attorneys' fees and costs . *Id.* at III.B.ii. Although the attorney-client contract between Collective Counsel and Plaintiffs entitles Collective Counsel to recover their out-of-pocket expenses in *addition* to 40% of the Gross Settlement Amount, Collective Counsel is not seeking to recover their expenses separately.

**F.     SERVICE AWARDS FOR NAMED PLAINTIFFS**

Pursuant to the terms of the Settlement Agreement, and subject to Court approval, Named Plaintiffs Stenulson and Lowe will each receive a Service Award in the amount of $2,500.00 in recognition of the time and effort they expended on behalf of the Collective, as well as for their execution of a general release.

## III.
## ARGUMENT & AUTHORITIES

**A.     THE LEGAL STANDARD FOR APPROVAL OF FLSA SETTLEMENTS**

Under the FLSA, non-exempt employees must be paid overtime for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207. It is unclear in the Tenth Circuit whether court approval is necessary for FLSA settlements. *See Saari v. Subzero Eng'g*, No. 2:20-CV-00849-CMR, 2021 WL 4245300, at *3 (D. Utah Sept. 17, 2021). "[T]he FLSA itself does not require court approval for all FLSA settlements." *Hawthorn v. Fiesta Flooring, LLC*, No. 1:19-cv-00019 WJ/SCY, 2020 WL 3085921, at *1 (D.N.M. June 10, 2020). "Moreover, 'there are no discussions in any Supreme Court interpretations of the FLSA on whether a settlement or dismissal of an action to vindicate FLSA rights under 29 U.S.C. § 216(b) is conditioned on court approval[,] . . . and the Tenth Circuit Court of Appeals has not yet settled this issue.'" *Saari*, 2021 WL 4245300, at *3.

Historically, in the District of Utah, cases involving judicial approval of FLSA settlements largely addressed class action settlements, consistent with this court's holding that "[c]ollective action

settlements under the FLSA must be approved by the district court." *Id.* (citing *Cazeau v. TPUSA, Inc.*, 2:18-cv-00321-RJS-CMR, 2021 WL 1688540 (D. Utah. Apr. 29, 2021); *Brueningsen v. Resort Express Inc.*, 2:12-cv-843-DN, 2016 WL 10537003 (D. Utah May 23, 2016); *Campbell v. C.R. England, Inc.*, No. 2:13-cv-00262, 2015 WL 5773709, at *2 (D. Utah. Sept. 30, 2015). "The only case involving approval of an FLSA settlement of an individual plaintiff's claims relied on prior authority showing that this approach was 'endorsed by a majority of courts.'" *Id.* (quoting *Keel v. O'Reilly Auto Enterprises, LLC*, 2:17-cv-667, 2018 WL 10509413, at *2 (D. Utah May 31, 2018)).

"Since then, however, circuit courts and district courts in the Tenth Circuit have split 'on the issue of whether private settlements of bona fide disputes between employers and employees are valid under the FLSA without court or Department of Labor (DOL) approval,' and the majority of district courts 'have held that such approval is not necessary.'" *Id. See also Lawson v. Procare CRS, Inc.*, No. 18-cv-00248-TCK-JFJ, 2019 WL 112781 (N.D. Okla. Jan. 4, 2019) (collecting cases); *Acevedo v. Sw. Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *7 (D.N.M. Dec. 10, 2019) (same)). Based on that sound reasoning, Judge Cecelia M. Romero recently held as follows on the issue of approval of FLSA settlement agreements:

> In light of the split authority on this issue, the court declines Saari's invitation to rely on the decisions of other circuits and instead relies on persuasive authority from recent district court decisions in this circuit holding that "absent exceptional circumstances, the court need not review and provide approval for FLSA settlements." *Hawthorn*, 2020 WL 3085921, at *2 (citing *Fails v. Pathway Leasing LLC*, No. 18-cv-00308-CMA-NYW, 2018 WL 6056428, at *3 (D. Colo. Nov. 19, 2019)).

*Saari*, 2021 WL 4245300, at *4.

However, out of an abundance of caution, Plaintiffs ask this Court to approve their Agreement and enter a finding that it represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *See Keel*, 2018 WL 10509413, at *2. Or, alternatively, to determine that court approval is not necessary for the Parties' Agreement before it. *See Saari*, 2021 WL 4245300, at *4.

**B.     THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT**

### 1. The Settlement Resolves a *Bona Fide* Dispute.

"Parties requesting approval of an FLSA settlement must provide the court with sufficient information to determine whether a bona fide dispute exists." *Morton*, 2017 WL 977812, at *1 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)). The Parties may satisfy this burden by presenting evidence showing: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

Defendant is an outsourcing company providing customer support that specializes in inbound and outbound teleservices, email response, live web chat, employee leasing and interactive voice response services.[4] Defendant has multiple contact centers worldwide that provide support twenty-four (24) hours a day, seven (7) days a week, 365 days a year.[5] Defendant employs the Collective Members to work in its call centers (as well as remotely) throughout the United States—specifically, answering phones and responding to and assisting Defendant's clients and customers.

Plaintiffs contend that Defendant's policies and procedures (both written and unwritten) forced them to perform their preliminary work activities off-the-clock, and without compensation. Defendant strongly disputes that any work was performed off-the-clock by Plaintiffs and the Collective Members. Defendant also maintains that to the extent any work *was* performed off-the-clock it was either *de minimis* or not compensable. *See* ECF No. 65. Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is a *bona fide* dispute. The Parties

---

[4] https://roicallcentersolutions.com/about-us/.

[5] *Id.*

acknowledge that their claims and defenses pose risks, which informed, in part, their decision to resolve the *bona fide* disputes between them through settlement.

### 2. The Terms of the Settlement are Fair and Reasonable.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-CV-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). Courts assessing an FLSA settlement for fairness and reasonableness often examine the following Rule 23 factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Keel*, 2018 WL 10509413, at *3; *McKeon v. Integrity Pizza LLC*, No. 18-CV-932-WJM-KLM, 2020 WL 6782238, at *2 (D. Colo. Nov. 18, 2020) (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Delvin v. Scardelletti*, 536 U.S. 1 (2002)); *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *4 (D. Kan. Jan. 3, 2017) (citing *Barbosa v. Nat'l Beef Packing Co.*, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Hoffman*, 2017 WL 25386, at *4.

#### a. *The Agreement Was Fairly and Honestly Negotiated.*

First, the settlement was fairly and honestly negotiated by counsel highly experienced with FLSA collective actions. *See generally* Declaration of Clif Alexander, attached as Exhibit 2. Prior to their good faith, arms-length settlement negotiations, the Parties exchanged substantial data showing the days and weeks worked and compensation received by Plaintiffs and the Collective Members. *See id.*

¶¶ 18. The Parties created detailed damages models based on this data to inform their negotiation efforts at mediation. *Id.* During mediation, the Parties evaluated the strengths and weaknesses of their respective claims and defenses and exchanged multiple demands and counter-offers with the assistance of experienced mediator, Dennis Clifford. *See id.* These negotiations between experienced wage and hour counsel, and moderated by an experienced wage and hour mediator, demonstrate the Agreement was fairly and honestly negotiated. *See id.* at ¶ 21.

        b.       *The Ultimate Outcome of the Litigation Was (and Is) Unknown.*

Second, questions of law and fact exist as to whether Defendant is liable to Plaintiffs and the Collective Members and, if so, in what amount(s). The Parties dispute the number of hours the Collective Members worked off-the-clock, if any, whether Plaintiffs were properly paid under the FLSA, whether Defendant acted in good faith and thus whether liquidated damages are appropriate, and whether Defendant acted willfully (which would affect whether Plaintiffs may recover under a two-year or three-year statute of limitations). Additionally, Defendant has challenged whether the complained of time was even compensable—at all. The proposed settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

        c.       *The Value of the Settlement to the Plaintiffs Is Significant.*

Third, the immediate recovery offered by the proposed Agreement is even more valuable considering the legal and factual uncertainties related to the alleged liability and damages. If the Parties continue to litigate the matter instead of settling, the next steps will require the Parties to engage in additional lengthy and costly discovery, disputes and motion practice regarding decertification. To be sure, Defendant has already filed one motion for summary judgment and would likely file a second were litigation to continue. Likewise, Plaintiffs would also file their own cross-motion(s) for summary judgment on the issues of liability, willfulness, and Defendant's good faith defense. *See id.* Finally, the Parties, and this Court, would face a lengthy potential trial on issues of liability and damages. *See id.* ¶

22. Instead of undertaking this course of protracted litigation, which may result in no recovery at all, the proposed settlement guarantees that Plaintiffs and the Settlement Collective Members will receive a substantial recovery.

Indeed, the degree of uncertainty here is high because Defendant vigorously contested Plaintiffs and the Collective Members' claims, denied that these employees were improperly paid or that any alleged damages are owed. Defendant also denied that Plaintiffs and the Collective Members were entitled to liquidated damages or that they acted willfully. Even though this case was hotly contested, the Net Settlement Amount awards a substantial amount to each Collective Member, as set out in Section III.C.ii of the Settlement Agreement. . This settlement represents substantial recovery considering Defendant's strong defenses to liability, the ongoing risks of litigation, and the real possibility of a protracted fight for allegedly unpaid overtime.

Although Plaintiffs are not receiving 200% of their "best day" damages, as is invariably the case in a settlement of hotly disputed cases, the Collective Members are entitled to recover significant relief under the Agreement.. However, even "[s]ettling for a small portion of the claimed unpaid wages without accounting for the liquidated damages" is not cause for concern when "the presence of some . . . lawful defense to payment (if any) . . . warrant[s] a reasonable compromise." *Cazeau*, 2021 WL 1688540, at *5. *Compare* Ex. 1, § III.C.ii (providing for a minimum payment *plus* a pro rata share of the Net Settlement Amount) *with Cazeau*, 2021 WL 1688540, at *5 (approving FLSA settlement where Court calculated that each opt-in plaintiff would only receive "approximately $4.60"). Here, if Defendant were successful on its defenses, Plaintiffs and the Collective Members would recover nothing. Thus, because Defendant has defenses that call into question Plaintiffs and the Collective Members' ability to succeed on their claims, the overall settlement amount is justified. *Cazeau*, 2021 WL 1688540, at *5 (recognizing that "as both sides were represented by counsel and the case settled with the assistance of a mediator, [the court] accept[s] the [p]arties' representation that, to the extent

there was a compromise, the amounts reached represent a fair and equitable one[ ]" (internal quotation marks and citation omitted)).

        d.        *The Parties Agree the Settlement Is Fair and Reasonable.*

Fourth, the Parties agree that the settlement is fair and reasonable. Plaintiffs, individually and on behalf of all Collective Members, and Defendant, have signed the Agreement. Both Plaintiffs and Defendant agree that the Agreement constitutes the fair and reasonable resolution of a bona fide dispute. Moreover, Collective Counsel agrees that the Agreement fairly and reasonably resolves the wage and hour claims of the Collective. *See* Ex. 2, ¶ 21.

        e.        *The Attorneys' Fees Under the Agreement Are Reasonable.*

Fifth, as discussed in greater detail *infra*, Collective Counsel's fee award is fair and reasonable. *See, e.g.*, *Logan v. United American Security, LLC*, No. 21-cv-00257-NYW, 2022 WL 2966857, at *4 (D. Colo. July 27, 2022); *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019). The FLSA provides that the Court "shall … allow [plaintiff] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 WL 5269828, at *1 (W.D. Okla. Oct. 23, 2018). If the Court examines Collective Counsel's attorneys' fees, the Court should find they are within the customary fee range approved by courts in this Circuit (including in this District), and that the amount requested is fair and reasonable under the circumstances of this case. *See, e.g.*, *McKinley v. Mid-Continent Well Logging Serv., Inc.*, No. CIV-14-649-M, ECF 48 (W.D. Okla. Mar. 2, 2016) (approving fee award of 40% of gross settlement fund); *see also McMillian v. BP Service, LLC,* 2020 WL 4015259, at *3 (D. Kan. 2020) (determining "a 40% fee is fair and reasonable")*; Ostrander v. Customer Eng'g Servs., LLC*, No. 15-CV-1476-PAB-MEH, 2019 WL 764570 *6 (D. Colo. Feb. 21, 2019) ("fees have ranged from 4 percent to 58 percent" of settlement fund).

C. **THE ATTORNEYS' FEES AND COSTS ARE REASONABLE.**

Collective Counsel's request for attorneys' fees in the amount of forty percent is reasonable, fair and an important provision of the Parties' agreement. The FLSA provides "[t]he court … **shall**, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); *see also Garcia*, 770 F.3d at 1308; *Tabb*, 2018 WL 5269828, at *1.

Although an award of attorneys' fees under the FLSA is **mandatory**, district courts generally only examine (at most) whether the fee award in an FLSA settlement agreement is reasonable. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (recognizing that an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions); *Olivo*, 526 Fed. Appx. at 854 ("As prevailing parties on this claim, plaintiffs were entitled to an award of attorney's fees under 29 U.S.C. § 216(b)"); *Weiser v. Pathway Servs. Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *1 (N.D. Okla. Aug. 26, 2019) (same); *Ali v. Jerusalem Restaurant, Inc.*, No. 14-CV-00933-MEH, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015) (same). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The "process of reviewing and approving stipulated attorneys' fees in the event of a settlement [of FLSA claims] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA settlements "requires . . . deference . . . to the parties' agreement." *Id.*

1. **The Percentage of the Fund Method Supports Plaintiffs' Requested Fee Award.**

"The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach,

matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir. 1998); *see Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010). In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

Here, Collective Counsel seek to recover forty (40%) percent of the Gross Settlement Amount, inclusive of fees and costs.[6] Forty percent of the common fund constitutes a typical award in this District and in the Tenth Circuit, and should be approved.

  **2. Application of the *Johnson* Factors Supports the Reasonableness of the Requested Fee Award.**

The Tenth Circuit also has instructed that a court making a percentage fee award in a common fund case should analyze the reasonableness of the fee award under the Johnson factors. *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2021 WL 5369798, at *4 (D. Kan. Nov. 17, 2021), judgment entered, No. 17-MD-2785-DDC-TJJ, 2021 WL 5369815 (D. Kan. Nov. 17, 2021) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The weight given to each *Johnson* factor varies from case to case, and each factor may not always apply. *See id.* at 456 (finding that "rarely are all of the Johnson factors applicable; this is

---

[6] Collective Counsel have incurred substantial unreimbursed litigation expenses to date. Excluding those unreimbursed expenses, Collective Counsel only seeks to recover approximately 35% of the common fund in attorneys' fees.

particularly so in a common fund situation").

Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id.* Considering the circumstances presented herein, Collective Counsel's requested attorneys' fees and litigation expenses are eminently reasonable as both as a percentage of the total common settlement fund and under the *Johnson* factors.

        a.    *FLSA Collective Actions are Inherently Complicated, and Collective Counsel is Experienced and Skilled in Handling the Same (Factors 2-4 and 9-10).*

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. *See, e.g., Whittington*, 2013 WL 6022972, at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("[W]age and hour collective and class actions are, by their very nature, complicated and time-consuming"). Three fundamental questions governed this case: (1) whether the Plaintiffs and the Collective Members performed work off-the-clock and without compensation; (2) whether time worked off-the-clock (if any) was compensable and (3) whether these questions could be resolved on a collective basis. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA.

Collective Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are beneficial in FLSA cases such as this. *See generally* Ex. 2. Hybrid FLSA collective action/Rule 23 class

action cases such as this one are the main focus of Collective Counsel's docket. Although Collective Counsel is based in Texas, Anderson Alexander, PLLC has a national docket of wage and hour cases, with litigation across the United States. Ex. 2 at ¶¶ 4–17. Further, Collective Counsel has litigated hundreds of similar cases against call centers with tremendous success and has a specialized knowledge of the industry. *Id.* at ¶ 17.

Collective Counsel's experience has caused them to review and become familiar with a large body of documents and information concerning FLSA litigation, as well as the evidence and testimony necessary to the successful prosecution of FLSA collective actions, which benefits cases such as this, and maximizes the settlement value of the case. *Id.*

Especially considering the number of Plaintiffs, resolving the procedural issues, merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972, at *6. As courts in this Circuit have noted, attorneys handling such large cases are precluded by the ticking clock from taking other cases (factor 4), given that counsel took a chance on possible recovery in a contingent fee case rather than strictly working on an hourly basis. *Id.* Collective Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making this case relatively undesirable (factor 10). *See Aragon v. Clear Water Prod. LLC,* No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *6 (D. Colo. Dec. 18, 2018). Indeed, the possibility existed in this case that no recovery would be made for the significant time and efforts exerted by Collective Counsel.

        b.     *The Time and Labor Required Was Substantial and Collective Counsel's Requested Costs Are Reasonable (Factors 1 and 7).*

Regarding the time and efforts required of Collective Counsel (factors 1 and 7), this matter has been pending for two years. During this time, Collective Counsel, consisting of the seven (7) lawyers who worked on this Lawsuit, local counsel, and multiple staff members performed extensive work. *See generally* Ex. 2 at (describing Collective Counsel's qualifications and effort spent on this case).

Indeed, Collective Counsel have litigated this hybrid class/collective action for two years, have successfully sought (and obtained) conditional certification of an FLSA collective, defeated Defendant's dispositive motion, initiated formal discovery in compliance with this Court's orders, prepared a comprehensive damage model on behalf of the class/collective, and reached a global settlement benefitting the entire class/collective. *Id.* ¶ 18. These efforts represent a significant amount of time expended to reach resolution of this Lawsuit. *Id.*

In addition, Collective Counsel has incurred ▮▮▮▮▮ in unreimbursed costs to-date. *Id.* at ¶ 23. "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Collective Counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, photocopying and duplication, fees for the distribution and processing of the collective notice, postage, and other delivery or service fees, PACER charges, and legal research. *Id.* These are the types of costs normally billed to clients. *See Aragon*, 2018 WL 6620724, at *7; *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014). Although these expenses were reasonable and necessary for the successful prosecution of this case, Collective Counsel is not seeking to recover costs outside of the negotiated fee award.

        c.    *Collective Counsel Represented Plaintiffs and Collective Members on a Contingency Basis (Factors 5, 6, 10, 12).*

Next, the negotiated, and agreed upon, contingency fee (factors 5, 6, 10, and 12) in the contract between Plaintiffs and Collective Counsel provides for a contingency fee of 40% of the Gross Settlement amount. Ex. 2 at ¶ 25. Collective Counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which if not recovered, would be lost, and Collective Counsel would have carried various advanced costs, as well as unrecoverable time spent. *Id.* Collective Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery. *Id.*

Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g.*, *Aragon*, 2018 WL 6620724, at *6; *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *4 (D. Colo. 2015).

    d.  *Collective Counsel's Requested Fee is Within the Customary Range (Factors 5, 6, 12).*

As discussed *supra* in Section III(B)(ii)(e), Collective Counsel's request for attorneys' fees in the amount of 40% of the Gross Settlement is well within the range of reasonableness for contingency fee cases in this Circuit. *See, e.g.*, *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *7 (D.N.M. Apr. 9, 2021) (citing *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1257 (D.N.M. 2012) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingency fee basis."); *Cook v. Rockwell Int'l Corp.*, 2017 U.S. Dist. LEXIS 181814, 2017 WL 5076498, at *1-2 (D. Colo. Apr. 28, 2017) (explaining forty percent fee falls within acceptable range in Tenth Circuit); *Blanco v. Xtreme Drilling & Coil Services, Inc.*, 2020 U.S. Dist. LEXIS 126155, 2020 WL 4041456, at *5 (D. Colo. July 17, 2020) (awarding 38% fee of $850,000 settlement in wage hybrid action because it was in "line with the customary fees and awards in similar cases"); *Peck v. Encana Gas & Oil, Inc.*, 2018 U.S. Dist. LEXIS 28630, 2018 WL 1010944, at *3 (D. Colo. Feb. 22, 2018) (finding 37.5% fee in wage and hour hybrid action to be "well within the range for a contingent fee award") (collecting cases); *Whittington v. Taco Bell of America, Inc.*, 2013 U.S. Dist. LEXIS 161665, 2013 WL 6022972, at * 6 (D. Colo. Nov. 13, 2013) (explaining that the fees and costs of 39% of the fund were "within the normal range for a contingent fee award" in wage and hour hybrid class action); *Enegren v. KC Lodge Ventures LLC*, 2019 U.S. Dist. LEXIS 177192, 2019 WL 5102177, at *9 (D. Kan. Oct. 11, 2019) (awarding 40% of fund in wage collective action)); *McMillian*, 2020 WL 4015259, at *3; *Ostrander*, 2019 WL 764570 *6 (D. Colo. Feb. 21, 2019).

    e.  *Degree of Success Obtained is High (Factor 8).*

Finally, "the most critical factor in determining a fee award is the degree of success obtained".

*Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). As discussed *supra* in Section 3(B)(ii)(c), the degree of success here is high and supports Collective Counsel's attorneys' fees.

For these reasons, Collective Counsel's negotiated fee of 40% and is reasonable and necessary in this case and is in line with other awards in common fund cases in this district.

D.  **THE COURT SHOULD APPROVE PLAINTIFFS' SERVICE AWARDS AND PAYMENT TO THE CLAIMS ADMINISTRATOR.**

Named Plaintiffs' requested Service Awards are reasonable, and Defendant does not object to the same. Named Plaintiffs are able to receive a reasonable incentive payment as part of a class or collective action settlement. *See*, *e.g.*, *Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) (granting FLSA named plaintiffs normal service awards of $20,000); *Shaw*, 2015 WL 1867861, at *1 (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken*, 2010 WL 5387559, at *8 (approving $10,000 service award to named plaintiff).

Here, Plaintiffs Stenulson and Lowe took on significant responsibility and exposed themselves to reputational harm to bring this collective action on behalf of the Collective Members. *See* Ex. 2, ¶ 26. Moreover, they were both readily responsive, assisted Collective Counsel at all stages of the litigation, provided information to support the claims of the Collective Members, and were instrumental in obtaining the settlement before this Court. *See id.*

"Where a settlement agreement calls for the costs of administration to be borne by the settlement fund, the court should approve same." *Campbell*, 2015 WL 5773709, at *8 (citations omitted). Here, the claims administrator will handle disseminating notice and administering the settlement. The claims administrator's costs are estimated to be ▮▮▮▮▮. This amount is reasonable given the number of persons involved, and this amount is within the range of administrative fees

approved by other courts. *See Campbell*, 2015 WL 5773709, at *8 (approving fees estimated to be ▇ and citing case approving administrative fees of ▇ (citation omitted)).

## IV.
## CONCLUSION

For all the reasons set forth herein, Plaintiffs Stenulson and Lowe respectfully request the Court approve the Parties' Settlement Agreement and Release (Ex. 1) in full.

Date:   September 30, 2022                    Respectfully submitted,

            By:   /s/ *Clif Alexander*
              Clif Alexander
              Austin W. Anderson
              **ANDERSON ALEXANDER, PLLC**
              (Admitted *Pro Hac Vice*)

              Andrew W. Stavros
              **STAVROS LAW P.C.**

              *Attorneys for Plaintiffs and Collective Members*

## CERTIFICATE OF COUNSEL

I hereby certify that I have conferred with Defendant's counsel of record and Defendant is not opposed to the filing of this Motion or the relief requested herein.

              /s/ *Clif Alexander*
              Clif Alexander

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2022, I caused a true and correct copy of the foregoing document to be served on all counsel of record via the Court's CM/ECF system.

              /s/ *Clif Alexander*
              Clif Alexander